## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DAWDA, MANN, MULCAHY &
SADLER, P.L.C.

        Plaintiff,

                        Case No. 14-10636

        v.                  HON. TERRENCE G. BERG

BANK OF AMERICA, N.A.,

        Defendant.

_____/

## OPINION AND ORDER DENYING
## <u>DEFENDANT'S MOTION TO DISMISS (DKT. 10)</u>

This matter is before the Court on Defendant Bank of America, N.A.'s ("Defendant's") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 10)  This motion was fully briefed and the parties presented oral argument on June 9, 2014.  For the reasons set out below, Defendant's motion to dismiss is **DENIED**.

## I.  INTRODUCTION

This is a negligence case.  Plaintiff, the law firm of Dawda, Mann, Mulcahy & Sadler, P.L.C. ("Plaintiff"), alleges that it suffered significant monetary losses because of Defendant Bank of America, N.A.'s negligence in accepting over $500,000 in diverted trust account checks.  As part of a fraudulent scheme, a former partner of Plaintiff caused Plaintiff to write a number of checks made payable to Defendant

from Plaintiff's IOLTA account.[1]  The partner, an account holder and customer of Defendant, presented these checks to Defendant, and Defendant deposited the funds into the partner's personal account maintained by Defendant.  Though Plaintiff did not owe Defendant any money and did not have a business relationship with Defendant, it is alleged that Defendant made no inquiry regarding the checks before depositing them.  As a result, Plaintiff alleges that Defendant violated the common law "duty of inquiry."  Defendant counters that it did not owe Plaintiff any duty and that it held the checks as a holder in due course under the Uniform Commercial Code ("UCC"), free from any claims on the checks.  For the reasons that follow, Defendant's motion to dismiss is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a law firm located in Bloomfield Hills, Michigan.  (Second Amended Complaint, Dkt. 9, at ¶ 1.)  Beginning on or about November 15, 2010, Plaintiff's former partner Kenneth Flaska ("Flaska") defrauded Plaintiff by laundering funds through Defendant.[2]  (*Id.* at ¶ 6.)  Flaska's fraud consisted of presenting and depositing checks drawn on Plaintiff's IOLTA account into Flaska's personal bank account maintained by Defendant.  (*Id.*)  From November 2010 until March 2013, Defendant received and credited nine of these checks into Flaska's account, totaling $529,676.50.[3]  (*Id.* at ¶ 7.)  All of the checks were drawn from

---

[1]  An IOLTA ("Interest on Lawyer's Trust Account") account is an interest-bearing account maintained by an attorney or law firm to pool funds being held in trust for a client or clients, as required under Michigan Rule of Professional Responsibility 1.15(d).

[2]  Flaska pled guilty to bank fraud and money laundering for this scheme, and was sentenced to 64 months in prison.  *See* E.D. Mich. Case No. 14-20131.

[3]  Dkt. 9 at ¶ 7 lists the checks as follows:

2

Plaintiff's IOLTA account and were payable on their face to "Bank of America," the Defendant. (*Id.* at ¶¶ 6-7., Exs. A-I.) Despite the fact that Plaintiff was not one of Defendant's customers and was not indebted to Defendant, Defendant allegedly never inquired into these checks before crediting them to Flaska's account. (Second Amended Complaint, Dkt. 9 at ¶¶ 9, 13.)

On November 15, 2013, Plaintiff sued Defendant in Oakland County Circuit Court. [4] (Dkt. 1, Ex. 1.) Plaintiff amended its state court complaint on February 5, 2014, alleging four counts against Defendant, including: (1) breach of the common law duty of inquiry; (2) common law conversion; (3) statutory conversion; and (4) negligence. (*Id.*) Defendant removed the case to this Court on February 11, 2014. (Dkt. 1.) Plaintiff subsequently amended its complaint, eliminating Counts 2 and 3 and proceeding solely on Counts 1 and 4. (*Id.*)

## III.   ANALYSIS

### A. Standard of Review

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a

---

- On or about November 15, 2010 a check for $39,229
- On or about February 14, 2011 a check for $50,000
- On or about August 24, 2011 a check for $46,797.56
- On or about March 29, 2012 a check for $46,235
- On or about May 22, 2012 a check for $200,000
- On or about October 22, 2012 a check for $10,000
- On or about February 14, 2013 a check for $24,828
- On or about February 28, 2013 a check for $35,219.94
- On or about March 1, 2013 a check for $77,366.60

[4] Oakland County Circuit Court Case No: 2013-137389-CB.

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B. Discussion

### 1. The Common Law Duty of Inquiry.

Plaintiff alleges that Defendant was negligent because it breached its common law "duty of inquiry." In diversity jurisdiction actions, federal courts must "appl[y] the substantive law of the forum state—in this case, Michigan." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). The Michigan Court of Appeals first recognized a common law duty of inquiry in *Allis Chalmers Leasing Servs. Corp. v. Byron Ctr. State Bank*, 341 N.W.2d 837 (Mich. Ct. App. 1983). In *Allis Chalmers*, the plaintiff wrote a check payable to the defendant, Byron Center State Bank, as part of a purchase and leaseback agreement that the

4

plaintiff had entered into with Gary Deneen, a customer of the defendant. *Id.* at 839. Deneen presented the check to the defendant as part of a fraudulent scheme Deneen devised to defraud the plaintiff. *Id.* The defendant's employee distributed the proceeds according to Deneen's instructions without making any inquiry into how the funds should be used. *Id.*

Seeking to recover its losses, the plaintiff brought a negligence action against the defendant bank for the amount of the check. The plaintiff alleged that the defendant bank was negligent in disbursing the check to Deneen without first inquiring into how the funds should be disbursed. *Id.* On appeal, the Michigan Court of Appeals affirmed the trial court's grant of summary judgment in favor of the plaintiff, citing the general rule that "[w]here a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment." *Id.* (internal citation omitted).

In addition, the Michigan Court of Appeals, adopting a California Supreme Court decision, held that plaintiff's negligence action was not abrogated by the UCC's "holder in due course" doctrine. The defendant in *Allis Chalmers* argued that it was a holder in due course under the UCC and not liable under the common law duty of inquiry. A holder in due course then, and now, takes an instrument free of any claims on the instrument. *See* Mich. Comp. Laws § 440.3306. The Michigan Court of Appeals rejected the defendant's argument and instead adopted the

California Supreme Court's holding in *Sun 'N Sand, Inc. v. United Cal. Bank*, 582 P.2d 920 (Cal. 1978). *Id.* at 840.

In *Sun 'N Sand*, the California Supreme Court recognized that banks have a duty of inquiry that is "activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." 582 P.2d at 937. *Sun 'N Sand* explained that the duty of inquiry is narrow in scope, stating

> "[T]he bank's obligation is minimal. We hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at its peril."

*Id.* Since the bank was under the duty of inquiry, *Sun 'N Sand* held that the UCC's holder in due course doctrine was not a defense to the common law duty of inquiry because banks were on notice "so as to preclude UCB from holder in due course status[.]" *Id.* at 933.

## 2. The 1993 Revision to the UCC.

In response, Defendant argues that *Allis Chalmers* is old law, and that Michigan's 1993 revision to the UCC abrogated the common law duty of inquiry. Defendant cites no case law in support of its position that the duty of inquiry was preempted or overturned in Michigan as a result of the 1993 UCC revisions, and the Court finds little precedential support for this assertion.

Indeed, contrary to Defendant's position, there is case law holding that the duty of inquiry recognized in *Allis Chalmers* remains in force in Michigan and may

6

preclude a party from taking as a holder in due course under the UCC.  In *Grand Rapids Auto Sales, Inc. v. MBNA Am. Bank*, 227 F. Supp. 2d 721, 725-726 (W.D. Mich. 2002), citing *Allis Chalmers*, the court held that there is a duty of inquiry that "arises only in circumstances where the check is physically presented to the bank for negotiation by the dishonest employee and the bank, through its agent, has the opportunity to inspect the check for irregularities that should alert the bank that fraud is amiss."  *Grand Rapids* involved an employee of a Michigan company who defrauded the company by taking company checks made payable to defendant MBNA bank and having MBNA apply the checks to her husband's credit card.  *Id.* at 723.  The bank accepted the checks through automatic electronic processing.  *Id.* The company, who did not have a relationship with MBNA, sued MBNA alleging that MBNA violated its common law duty of inquiry.  *Id.* at 722.

Although the court rejected the company's argument and held that MBNA was a holder in due course, it did so because it ruled that the duty of inquiry did not *extend* to automatic credit card payments, not because the duty of inquiry did not *exist*.  *Id.* at 726.  And the court explicitly distinguished its holding from *Allis Chalmers* based on the factual circumstances of the case, "[t]he key distinction between this case and *Sun 'N Sand* and *Allis Chalmers* is that the banks in those cases actually inspected the checks and should have been alerted by the circumstances – a check drawn payable to the order of the bank by a drawer not indebted to the bank and presented by a third party seeking to negotiate the check for his own benefit – that the employee's conduct may have been improper."  *Id.* at

7

726-27 (internal citations omitted).  The factual scenario offered by the court as an example of the situation where the duty of inquiry should still apply is exactly what Plaintiff alleges happened in the case at bar.

Moreover, *Grand Rapids* is not the only Michigan case arising after the 1993 revision of the UCC which refers to the continuing vitality of the duty of inquiry. *See In re First Independence Capital Corp.*, 181 Fed. App'x 524, 529 n.2 (6th Cir. 2006) ("[t]o the extent that First Independence seeks to maintain a claim under *Allis Chalmers*, we note that *Allis Chalmers* involved an ordinary negligence action for a bank's breach of its duty of inquiry."); *cf. Double v. Bank of Lenawee*, No. 262541, 2005 WL 2372149, at *2 (Mich. Ct. App. Sept. 27, 2005) (rejecting defendant bank's defense under a different UCC provision and citing *Allis Chalmers* for the proposition that "[w]here a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment.").

3. ***Sun 'N Sand*'s Holding that a Party under a Duty of Inquiry Takes with Notice and Is Not a Holder in Due Course Remains Good Law.**

Defendant next attempts a collateral attack on *Allis Chalmers* by arguing that *Sun 'N Sand*, the basis for *Allis Chalmers*, is no longer good law.  This argument is not well taken.  Defendant advances two arguments to establish that *Sun 'N Sand* has been overturned: (1) that the language of the UCC explicitly

8

rejects *Sun 'N Sand's* holdings and (2) that changes in the UCC's holder in due course language now prevent the result in *Sun 'N Sand*.

Defendant's first point is without merit because the UCC does not explicitly reject *Sun 'N Sand's* holding regarding the duty of inquiry. Defendant relies upon Comment Two of Mich. Comp. Laws § 440.3417, which states, "[i]n *Sun 'N Sand, Inc. v. United California Bank*, 582 P.2d 920 (Cal.1978), the court held that under former Section 3-417(1) a warranty was made to the drawer of a check when the check was presented to the drawee for payment. The result in that case is rejected." This comment rejects *Sun 'N Sand's* result holding that a warranty is made to the drawer of the check when it is presented to the drawee, but it does not address *Sun 'N Sand's* holding regarding the duty of inquiry. This comment is consequently inapplicable.

Defendant's second point fares no better. Defendant argues that the 1993 revision of the UCC abrogated *Sun 'N Sand's* holding that defendant had notice and as such was not a holder in due course. The UCC section in force when *Sun 'N Sand* was decided, §3-304, provided in relevant part:

> (1) The purchaser has notice of a claim or defense if
>
> > (a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; or
>
> ****

*Sun 'N Sand* found the facts before it to "suggest an irregularity in the negotiation of the checks which *at the very least* creates an ambiguity as to the proper

disbursement of the funds represented by the checks…notice derives not from a mere ambiguity as to the person to be paid, but from affirmative indications that an improper party is attempting to procure payment." *Id.* (emphasis added).

Defendant posits that this holding is no longer valid because the 1993 version of this section of the UCC eliminated the language regarding an ambiguity as to the party to pay. This argument fails to note that in *Sun 'N Sand*, the Court's holding that the bank had notice derived "not from a mere ambiguity as to the person to be paid," but rather from other affirmative indications that an improper party was trying to be paid. *Id.* As such, the revision eliminating the language about ambiguity as to the party to be paid does not invalidate the full scope of *Sun 'N Sand*'s holding because it also found notice to be sufficient where there were other indications – not just ambiguity as to the person to be paid – which suggested that the person attempting to negotiate the check was not entitled to receive the funds. *Id.*

Additionally, Mich. Comp. Laws § 440.3302(1)(a), the current section that defines a holder in due course, retains the language concerning irregularity on the instrument that the *Sun 'N Sand* court interpreted. Mich. Comp. Laws § 440.3302(1)(a) states that a party is a "holder in due course" if both of the following apply:

> (a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration **or is not otherwise so irregular or incomplete as to call into question its authenticity.**

> (b) The holder took the instrument (*i*) for value, (*ii*) in good faith, (*iii*) without notice that the instrument is overdue or has been dishonored or that there is an incurred default with respect to payment of another instrument issued as part of the same series, (*iv*) without notice that the instrument contains an unauthorized signature or has been altered, (*v*) without notice of any claim to the instrument described in section 3306, and (*vi*) without notice that any party has a defense or claim in recoupment described in section 3305(1).

(emphasis added). A check written to a bank as a payee by a non-customer who does not owe it any money is likely an irregularity under Mich. Comp. Laws § 440.3302. This is consistent with the position of the court in *Grand Rapids* where the court held that banks that physically inspect a suspect check are in a position to be placed on notice. 227 F. Supp. 2d at 726 ("the banks in those cases actually inspected the checks and should have been alerted by the circumstances . . .").

Defendant counters that under Mich. Comp. Laws § 440.3302, the irregularity must be on the face of an instrument and not merely based on the circumstances of a transaction. In support of this argument, Defendant points to Comment One of Mich. Comp. Laws § 440.3302(a)(1), which states in relevant part:

> Subsection (a)(1) is a return to the N.I.L.[5] rule that the taker of an irregular or incomplete instrument is not a person the law should protect against defenses of the obligor or claims of prior owners. This reflects a policy choice against extending the holder in due course doctrine to an instrument that is so incomplete or irregular "as to call into question its authenticity." The term

---

[5] The Uniform Law Commissioners first promulgated the Uniform Negotiable Instruments Law ("N.I.L") in 1896 as way to organize the law of negotiable instruments. A revised version of the N.I.L. makes up the current version of Article 3 of the UCC. *See* Uniform Law Commission, UCC Article 3, Negotiable Instruments (1990) Summary, *available at* http://www.uniformlaws.org/ActSummary.aspx?title=UCC%20Article%203,%20Negotiable%20Instruments%20(1990) ("The old NIL in either its independent form or as part of the UCC has governed negotiable instruments in the United States for about 80 years, as its first major revisions are prepared for promulgation by the ULC in the year 1989. Another 80 or so years of service is expected for the revisions.").

> "authenticity" is used to make it clear that the irregularity or
> incompleteness must indicate that the instrument may not be
> what it purports to be.   Persons who purchase or pay such
> instruments should do so at their own risk.   Under subsection (1)
> of former Section 3-304, irregularity or incompleteness gave a
> purchaser notice of a claim or defense.   But it was not clear from
> that provision whether the claim or defense had to be related to
> the irregularity or incomplete aspect of the instrument.   This
> ambiguity is not present in subsection (a)(1).

Defendant's reading of Comment One to say that any irregularity must be on the
face of an instrument is not supported by the language of the Comment itself.   A
more accurate reading of this Comment is that where the irregularity *is* present on
the face of the instrument, so that a doubt is created that the instrument is what it
purports to be, the taker of an instrument with such an irregularity is not protected
as a holder in due course.   The Comment does not preclude a finding that the actual
language of Mich. Comp. Laws § 440.3302(a)(1) contemplated the possibility of
irregularities arising both on the face of the instrument and in the circumstances of
its negotiation.   That language speaks not only of the face of the instrument but
also of its negotiation when it states: "[t]he instrument when issued **or negotiated
to the holder does not bear such apparent evidence of forgery or alteration or is not
otherwise so irregular or incomplete as to call into question its
authenticity.**" (*Id.*) (emphasis added).   An instrument that has no marks of
forgery or alteration on its face may nevertheless have its authenticity called into
question by the surrounding circumstances of its negotiation.   Further, had the
drafters of the UCC intended to change the holder in due course section to require
that an irregularity must be on the face of an instrument, they would have so
stated.   Indeed, the drafters were clear in their express rejection of *Sun 'N Sand*'s

12

warranty holding.  This Court does not find support in the statutory text to hold that an irregularity must be on the face of the check.

Moreover, Defendant's position on the alleged abrogation of *Sun 'N Sand* is unsupported by case law.  California courts continue to invoke *Sun 'N Sand*'s duty of inquiry even after the amendments to the UCC upon which Defendant relies were adopted.  *See Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 411 n.3 (Cal. Ct. App. 2005) ("California courts have recognized one situation in which a bank has a duty to nondepositors to investigate a suspicious banking transaction.") (citing *Sun 'N Sand*); *Mills v. U.S. Bank* 83 Cal. Rptr. 3d 146, 160 n.22 (Cal. Ct. App. 2008) ("[w]e note that several California cases have recognized that under a common law negligence theory, a drawer of a check is owed a duty of care by a collecting bank when the risk of harm is foreseeable.  Indeed, in *Mills I* we followed those cases in ruling that Plaintiffs had pled a cause of action for common law negligence.").

### 4. Other Jurisdictions Maintain the Duty of Inquiry Against Holder in Due Course Status.

In addition to Michigan and California, multiple jurisdictions continue to deny the holder in due course defense where a taker is under a duty of inquiry.  In *Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 374 F.3d 521, 527-28 (7th Cir. 2004) (citing *Allis Chalmers* among others), the Seventh Circuit affirmed that banks under a duty of inquiry do not take as holders in due course under the UCC, stating that "implicit in the common law rule governing banks' liability to drawers is the proposition that a bank presented with a check made out to it by someone who owes it no money, for deposit in the presenter's account, does not take

the check in due course.  Otherwise section 3–302(a)(2) would dissolve the common law rule, which no one contends it does." *See also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 614 (7th Cir. 2001) ("The Land of Lincoln is by no means an exception in that regard.  This general proposition enjoys the unwavering support of a vast body of judicial opinion originating both before and after the creation of the U.C.C.") (internal quotations omitted).

Illinois is joined by various jurisdictions in holding that the duty of inquiry is not abrogated by the UCC.  *See Govoni & Sons Const. Co. v. Mechanics Bank*, 742 N.E.2d 1094, 1100 (Mass. App. Ct. 2001) ("[t]his rule is consistent with the code, and we have found no jurisdiction rejecting it."); *Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 235 (Mo. 1998) ("[c]ases from other jurisdictions clearly hold that a drawee bank that is the payee, and under a duty to inquire, cannot be a holder in due course.  The holder in due course doctrine is inapplicable in this case.") (internal citations omitted).

Considering the weight of authority, this Court is not persuaded that the revision to the UCC abrogated the common law duty of inquiry.  For the foregoing reasons, the common law duty of inquiry remains a viable claim in Michigan. Where it applies, the holder in due course defense is inapplicable.

### 5.  Mich. Comp. Laws § 440.3307.

Defendant also seeks refuge in another section of the UCC, claiming that Mich. Comp. Laws § 440.3307 effectively abrogates the common law duty of inquiry. Mich. Comp. Laws § 440.3307 defines when a taker of a negotiable instrument has

14

notice of a breach of fiduciary duty and thus does not take as a holder in due course.

Mich. Comp. Laws § 440.3307(2) provides:

> If (*i*) an instrument is taken from a fiduciary for payment or collection or for value, (*ii*) the taker has knowledge of the fiduciary status of the fiduciary, and (*iii*) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:
>
> (a) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.
>
> ****
>
> (d) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (*i*) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (*ii*) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (*iii*) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

The Court has found no case addressing the question whether Mich. Comp. Laws § 440.3307 abrogates the common law duty of inquiry on the merits. The Seventh Circuit, in *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 621 (7th Cir. 2001), came close to addressing this argument when it stated in dicta that the "case for displacement is anything but obvious, as the courts' continued reliance on the common-law rule itself suggests." There, defendant bank argued that Illinois' version of Mich. Comp. Laws § 440.3307 eliminated the common law duty of inquiry. *Id.* at 621. However, since the defendant did not raise this argument until appellate review, the Seventh Circuit declined to decide the issue on the merits. *Id.*

The Court begins with a plain reading of Mich. Comp. Laws § 440.3307. Comment Two of Mich. Comp. Laws § 440.3307 states that the section applies where a "fiduciary in effect embezzles money of the represented person by applying the proceeds of an instrument that belongs to the represented person to the personal use of the fiduciary."  Mich. Comp. Laws § 440.3307(1)(a) defines "fiduciary" narrowly, as an "an agent, trustee, partner, corporate officer or director, or other representative *owing a fiduciary duty with respect to an instrument*." (emphasis added).  So, even if a party is a fiduciary of an organization, Mich. Comp. Laws § 440.3307 is inapplicable if the party is not a fiduciary with respect to the check itself.  This is what the Seventh Circuit held in *Elizabeth State Bank*.  There, the Seventh Circuit found that a controller for a company who managed the company's books and accounts was not a fiduciary under Illinois' version of Mich. Comp. Laws § 440.3307 because he had "no authority to direct the proceeds" of checks on the company's account at issue.  265 F.3d at 622.  As such, the Seventh Circuit held that the controller "may have been a fiduciary for some purposes, but he did not qualify as a fiduciary with respect to checks drawn on the operating account and made payable to the bank's order."  *Id.*  Because this section applies only where a fiduciary (as to a particular check) is involved, it is narrowly drawn and does not cover every situation where a third-party attempts to divert the proceeds of a check by presenting a check made payable to a taker.  It follows that the scope of Mich. Comp. Laws § 440.3307, like its Illinois counterpart, does not encompass every situation where the common law duty of inquiry applies.

16

The Court must also consider that the UCC by its own terms provides for supplementation by other sources of law, such as the common law duty of inquiry. Mich. Comp. Laws § 440.1103 provides that "[u]nless displaced by the particular provisions of this act, the principles of law and equity…shall supplement its provisions." As discussed above, Mich. Comp. Laws § 440.3307 only applies where a fiduciary with respect to a certain instrument presents that instrument to a taker as payee. Because the duty of inquiry applies more broadly to situations that do not involve a fiduciary, the common law duty of inquiry is not displaced by a particular provision of the UCC.

Similarly, the holder in due course section specifically provides for supplementation by other sources of law. Mich. Comp. Laws § 440.3302(7) provides that "[t]his section is subject to any law limiting status as a holder in due course in particular classes of transactions." As evidenced by the considerable body of case law discussed above, numerous jurisdictions deny banks holder in due course status when they are "presented with a check made out to it by someone who owes it no money, for deposit in the presenter's account." *Travelers*, 374 F.3d at 527-28. Consequently, the duty of inquiry limits the holder in due course section.

Finally, the UCC's underlying purpose of promoting uniformity among jurisdictions weighs against a finding that Mich. Comp. Laws § 440.3307 has abrogated the common law duty of inquiry. Mich. Comp. Laws § 440.1103 provides:

> (1) This act must be liberally construed and applied to promote the following underlying purposes and policies:

17

(a) To simplify, clarify, and modernize the law governing commercial transactions.

**\*\*\*\***

(c) To make uniform the law among the various jurisdictions.

Various jurisdictions have upheld the common law duty of inquiry both before and after the enactment of the UCC. This Court has found no case abrogating the common law duty of inquiry in any jurisdiction. Hence, the interest of uniformity militates against abrogating the common law duty of inquiry.

For the foregoing reasons, this Court holds that the Mich. Comp. Laws § 440.3307 does not abrogate the common law duty of inquiry.[6]

### 6. Plaintiff has raised a Plausible Claim that Defendant had a Duty of Inquiry.

Having found that the common law duty of inquiry remains viable as a legal claim, we must now analyze whether Plaintiff's facts present a plausible claim that Defendant had a duty of inquiry in this case. *Sun 'N Sand* held that the duty is "activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." 582 P.2d at 937. Here, Plaintiff's checks were payable to Defendant. These checks were for a significant amount; together the nine checks totaled $529,676.50. And Flaska, a third-party, presented the

---

[6] Although Mich. Comp. Laws § 440.3307 does not abrogate the common law duty of inquiry, the Court notes that this section would apply here if Flaska is a fiduciary under the statute. Plaintiff asserts that Flaska was a fiduciary of the IOLTA account. However, since Plaintiff is not raising a claim under Mich. Comp. Laws § 440.3307 and further disclaims that Flaska is a fiduciary under that section, this Court need not decide the question whether Flaska is a fiduciary as defined in § 440.3307 at this time.

18

checks to Defendant for his own benefit.  Under these circumstances, a "bank may not ignore the danger signals inherent in such an attempted negotiation." *Id.* Based on these allegations, Plaintiff has raised a plausible claim that Defendant had a duty of inquiry.

As such, this Court holds that Plaintiff has pled a plausible claim for relief. Defendant's motion to dismiss (Dkt. 10) is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff has stated a plausible claim for relief and Defendant's motion to dismiss is **DENIED**.

**SO ORDERED.**

Dated:  November 24, 2014                         s/Terrence G. Berg
                                                  TERRENCE G. BERG
                                                  UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically submitted on November 24, 2014, using the CM/ECF system, which will send notification to all parties.

                                                  s/A. Chubb
                                                  Case Manager

19